IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| CLIFTON BRUMLEY, #779894 | § | |
| VS. | § | CIVIL ACTION NO. 9:10cv27 |
| BRAD LIVINGSTON, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Clifton Brumley, a prisoner confined at the Eastham Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on February 26, 2010. On August 5, 2010, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. A *Spears* hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Ginger Lively, Assistant Warden William Motal and Nurse Tara Patton testified under oath about prison policies and information contained in the Plaintiff's prison records.

1

The initial thrust of the Plaintiff's lawsuit focused on the medical care provided to him. On April 5, 2005, Defendant Nurse Hough examined him for a swollen right knee. Her initial assessment was a spider bite, and antibiotics were prescribed. The swelling became worse, and Nurse Hough decided that the illness was an antibiotic resistant staph infection, MRSA. Nurse Hough arranged a tele-video conference with a doctor at Hospital Galveston. The doctor told him that the condition was serious, and he prescribed Vancomycin. The Plaintiff asserted that he subsequently learned that Brown Recluse Spider bites were not treated with antibiotics and that other prisoners had received similar treatment.

The Plaintiff saw Nurse Hough about a hernia in May 2006. Nurse Hough told him that referrals were not made unless there was an emergency. He saw Nurse Hough again on September 6, 2006. He described symptoms of severe immune response with swollen lymph nodes. She did not think there was anything wrong, but she ordered lab tests. The lab tests came back showing "his white blood cell count was higher than normal and could be an indication of a disease such as an infection or leukemia." In the mean time, the hernia became worse as the months went by. Dr. Williams decided the situation was bad enough for a referral in March 2007. In May, the Plaintiff was referred for surgery. The Plaintiff was taken to Hospital Galveston on July 2, 2007. When asked about his general health, the Plaintiff told a doctor about the swollen lymph nodes, fever and infection. The Plaintiff expressed his fear of having cancer. The doctor prescribed antibiotics and told him that he would have surgery three weeks after starting the antibiotics. The Plaintiff testified that he did not receive the antibiotics when he returned to the Eastham Unit, and he still has not had a hernia operation. On July 19, 2007, Physician Assistant Culley called the Plaintiff to the infirmary and told him that he had thyroid disease and would be started on medication for hypothyroidism.

The Plaintiff reviewed his medical records on June 8, 2009, and he learned that Nurse Hough documented abnormalities in his thyroid stimulating hormones. He also learned that Dr. Williams expressed the opinion that the Plaintiff was cancerphobic because of his repeated requests for cancer tests. The Plaintiff testified that these facts reveal an attitude by medical personnel that show a lack of concern for the well being of inmates.

The Plaintiff went on to testify generally about the poor conditions in administrative segregation at the Eastham Unit. He has been confined in administrative segregation since 1996 after an escape. He asserted that he did nothing more than walk away from a job when he had an outside job. He expressed the opinion that his actions did not amount to a security threat and warrant ongoing confinement in administrative segregation. The Plaintiff testified that conditions in administrative segregation have deteriorated since 2002. He is supposed to receive two hours a day of recreation, but he does not receive any recreation on some days. The explanation usually provided is staffing shortages. He is supposed to get clean clothes every day when he showers, but he does not get an exchange of clothes every day. He likewise does not get a shower every day. The Plaintiff also testified that the quality of the food has gone down. The food is transported to administrative segregation in a hot box and left there for a period of time before it is distributed. Occasionally the food sits in the boxes for up to an hour. It is served cold. Officials also stopped distributing copies of the menu. He needs the menu in order to decide when to buy food from the commissary.

The Plaintiff testified that he sued Executive Director Brad Livingston because he is responsible for policies and implements the policies under which the prison system is operated. Wardens Sweetin and Oliver are responsible for the Eastham Unit and are personally involved in the policies. He sued UTMB-CMHC Executive Director Owen Murray because he is responsible for the

medical care provided to inmates. Murray implemented the policies regarding medical care. He sued Nurse Hough for her actions regarding his medical problems in 2005 and 2006. He stressed that she knew about his thyroid problems as early as September 2006.

The Plaintiff also alleged that he had been the victim of retaliation. He believes that he has been treated differently because he has filed grievances. For example, he has been kept in the shower in the past for an hour, as opposed to five to ten minutes. He acknowledged that other inmates in administrative segregation have likewise been kept in the shower for extended periods of time. He testified that his special diet for his thyroid problems was not immediately provided after it was prescribed. He again testified that he has been treated differently, which he attributes to retaliation for writing grievances. He added that writing grievances is a waste of time since they are always denied, but he has to exhaust his administrative remedies in order to file a federal civil rights lawsuit. He noted that Warden Oliver has denied many of his grievances.

Nurse Tara Patton testified under oath from the Plaintiff's medical records. She testified that he has been diagnosed with a bilateral inguinal hernia, which is a hernia in the groin area. His hernia has been easily reducible, which means that it can be easily put back in place. Surgery is not performed unless a hernia becomes strangulated. She noted that there are dangers with either option, but surgery is not performed if the hernia can be easily put back in place. The Plaintiff has also been diagnosed with hypothyroidism, which means that his thyroid does not produce enough hormones. The Plaintiff was prescribed synthetic hormones. Nurse Patton testified that swollen lymph nodes can be caused by hypothyroidism. On September 6, 2006, Nurse Hough saw him after he complained about fever and chills. He was fine at that time, but she ordered the lab tests. With respect to the spider bite, Nurse Patton testified that obviously Nurse Hough did not see the spider bite the Plaintiff,

but his condition looked like a spider bite to her. An abscess developed secondary to the spider bite, which resulted in the infection being drained and antibiotics being prescribed.

Warden Motal testified that there are two options for recreation in administrative segregation. The options are one hour of recreation for seven days or two hours for five days. The warden has the option to choose either method. He testified that inmates in administrative segregation are encouraged to shower every day to cut down on stench. With respect to hot boxes, prison officials are required to plug in the hot boxes for at least twenty minutes once they arrive on the housing wings. This is required in order to bring the food temperature back up to standards. The Plaintiff replied that he had not seen anyone plug in the hot boxes. Warden Motal finally testified that inmates who escape are normally kept in administrative segregation for the duration of their sentences. The Unit Classification Committee and State Classification Committee routinely conduct reviews of an inmate's continued confinement in administrative segregation, but he is unaware of any inmate being released from administrative segregation after having escaped from prison.

<u>Discussion and Analysis</u>

The first and most obvious point about the Plaintiff's medical claims is that they concern incidents that occurred from April 2005 to July 2007, while the lawsuit was not filed until February 26, 2010. There is no federal statute of limitations for 42 U.S.C. § 1983 actions; the relevant statute of the forum state furnishes the limitations period, but federal law determines the date the accrual commences. *Owens v. Okure*, 488 U.S. 235 (1989). The statute of limitations in Texas for § 1983 actions is two years. *Burrell v. Newsome*, 883 F.2d 416, 419 (5th Cir. 1989); *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993).

The Plaintiff's complaints about the medical care he received involved matters that occurred more than two years before the lawsuit was filed. The claims are time-barred. The claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

It is also noted that the only person the Plaintiff named as a defendant that had actual contact with him was Nurse Hough. All of his complaints about her involved incidents that occurred up to May 2006. Once again, such complaints are time-barred. The Plaintiff's remaining claims are against supervisory officials. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Livingston, Murray, Sweetin and Oliver did not participate in any alleged acts of misconduct. They were sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition was satisfied.

The Plaintiff tried to base a claim for a meritorious lawsuit against Warden Oliver because he signed the responses to Step 1 grievances denying his complaints. Congress requires inmates to exhaust their "administrative remedies as are available . . ." 42 U.S.C. § 1997e(a). A prison system is not required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has not established grievance procedures or fails to adhere to it. 42 U.S.C. § 1997e(b).

The Fifth Circuit has made it clear that inmates do not have a basis for a meritorious civil rights lawsuit just because they are unhappy with grievance procedures:

> Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Congress established the exhaustion requirement to give prisons and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedures. The Plaintiff does not have a basis for a potentially meritorious civil rights lawsuit against Warden Oliver because he denied his grievances or because he is dissatisfied with the grievance procedures.

Apart from the statute of limitations and failure to sue people who can be held accountable, the Plaintiff's lawsuit should be dismissed for the additional reason that it lacks merit. With respect to his medical claims, he could have a basis for a potentially meritorious civil rights lawsuit if he could show that specific defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). Complaints about the adequacy of medical treatment do not amount to a violation of federal rights. *See Estelle v. Gamble*, 429 U.S. at 107; *Jackson v. Cain*, 864 F.2d at 1244; *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Dissatisfaction with medical treatment or diagnosis does not constitute "deliberate indifference" to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle v. Gamble*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

In the present case, Nurse Hough provided medical care to him when she observed a condition that she thought was a spider bite. Antibiotics were prescribed. When the condition did not improve, she arranged a tele-video conference with a doctor at Hospital Galveston. The doctor prescribed Vancomycin for a staph infection. The facts surrounding this problem reveal that she was responsive to his medical needs. She was not deliberately indifferent.

Nurse Hough subsequently saw the Plaintiff for the hernia. This Court dealt with another claim by an inmate regarding a hernia in *Clark v. Adams*, No. 9:05cv208, 2006 WL 1305164 (E.D. Tex. May 9, 2006). Clark sued the attending doctor, who concluded that the hernia was easily reduced or put back into place and that surgery was unnecessary. Clark sued the doctor for failing to refer him for surgery to fix the hernia. The Court concluded that the case was frivolous because the inmate had received extensive medical care, including medication, a truss and medical

8

restrictions, and that his disagreement with the doctor as to whether surgery was necessary failed to surmount the "extremely high standard" required to show deliberate indifference. *Id.* at *6. The Fifth Circuit affirmed this Court's decision. *Clark v. Adams*, 233 Fed. Appx. 400 (5th Cir. 2007). It was noted that Clark's disagreement with the doctor's conclusion did not provide a basis for a potentially meritorious civil rights lawsuit. *Id.* at 401. The Plaintiff's complaint that medical personnel have not surgically fixed the hernia amounts to a disagreement with a medical decision and does not provide a basis for a potentially meritorious civil rights lawsuit.

The Plaintiff also complained about the care he received for hypothyroidism. Once again, however, Nurse Hough ordered blood tests when the Plaintiff complained about fever and chills. There was some evidence of thyroid problems at that time. He started receiving synthetic hormones a few months later. At most, the Plaintiff has a basis for a claim again her for a delay in receiving synthetic hormones, but a "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). The Plaintiff has not shown that she was deliberately indifferent or that he experienced substantial harm in the delay in receiving synthetic hormones.

The Plaintiff's complaints about conditions in administrative segregation are likewise frivolous. The Eighth Amendment prohibits the imposition of cruel and unusual punishment. The standard of determining whether the conditions are cruel and unusual "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1984). Conditions "alone or in combination" may amount to a constitutional violation. *Id.* at 347. On the other hand, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* The

"Constitution does not mandate comfortable prisons." *Id.* at 349. At the same time, in order to state a cognizable claim, a prisoner must allege facts showing that jail officials acted with a culpable state of mind -- that they acted with deliberate indifference. *Wilson*, 501 U.S. 294, 302-303 (1991); *Alberti v. Sheriff of Harris County, Texas*, 937 F.2d 984, 1004 (5th Cir. 1991). Finally, in order to state a claim, a prisoner must allege facts showing that he received more than a *de minimis* injury due to conditions. *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003).

The Fifth Circuit has considered a variety of cases which illustrate the type of conditions that are necessary to be considered cruel and unusual. In *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457 (5th Cir. 1983), the court held that allegations of a cold, rainy, roach-infested jail cell, with inoperative toilet facilities stated a cause of action. Similarly, allegations of cold cells with rats crawling all over prisoners state a cause of action. *Foulds v. Corley*, 833 F.2d 52 (5th Cir. 1987).

The Fifth Circuit rejected claims similar to those of the Plaintiff in *Mikeska v. Collins*, 900 F.2d 833 (5th Cir. 1990) and *Johnson v. Texas Bd. of Criminal Justice*, 281 Fed. Appx. 319, 322 (5th Cir. 2008). Inmates do not have a basis for a potentially meritorious lawsuit because of an occasional denial of recreation or showers. *Vinson v. Texas Board of Corrections*, 901 F.2d 474, 475 (5th Cir. 1990). On the other hand, a failure to provide showers for several months may state a claim. *Bradley v. Puckett*, 157 F.3d 1022 (5th Cir. 1998). The temporary denial of hygiene items likewise fails to state a claim. *Thomas v. Owens*, 345 Fed. Appx. 892, 895 (5th Cir. 2009).

Issues concerning food have been brought to the attention of the Fifth Circuit on many occasions. The State must furnish its prisoners with reasonably adequate food. *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir. 1977). The meals must be well balanced and containing nutritional value to preserve health. *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977). "The fact that the food

occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (5th Cir. 1985). The prison system is not required to provide inmates with three meals a day. *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986). The medical records reveal that the Plaintiff is 5'10" and weighs 161 pounds, which gives a normal Body Mass Index of 23. He has not been denied reasonably adequate food. He does not have a basis for a claim because the food is served cold. The Plaintiff has not alleged facts showing that the conditions of his confinement amount to cruel and unusual punishment.

The Plaintiff's claims about the conditions in administrative segregation should be dismissed for the additional reason that he has not shown that any of the Defendants possessed a culpable state of mind and that they acted with deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Overall, the Plaintiff's claims about the conditions of his confinement fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also complained about being confined in administrative segregation since 1996 after his escape. The case law is clear that the Plaintiff does not have a basis for a claim because he has been confined in administrative segregation. *Sandin v. Connor*, 515 U.S. 472, 484 (1995); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). "[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to ordinary life as a prisoner, will never be a ground for a constitutional claim." *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996). The Plaintiff has not shown extraordinary circumstances in this case. Moreover, inmates are confined in administrative segregation for being an escape risk. *Hay v. Waldron*, 834 F.2d 481, 486 n.8 (5th Cir. 1987). His confinement in administrative segregation after his escape does not violate the Constitution.

The Plaintiff finally alleged that he had been the victim of retaliation. In particular, he has been treated differently because he has filed grievances. To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). Officials may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988).

The Plaintiff has made only vague and conclusory claims of retaliation. For example, the fact that he may have been kept in the shower longer than normal, which other inmates have also experienced, does not support an inference of retaliation. Moreover, he has not shown that any of the Defendants possessed a retaliatory motive. The claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any in law and fact. The retaliation claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

After reviewing various allegations of retaliation, the Fifth Circuit, in *Martinez v. Griffin*, 840 F.2d 314, 314-15 (5th Cir. 1988), made the following observations, which are equally applicable in the present case:

> This case is one of an increasing number of examples of attempts by prisoners to use the courts as a general grievance procedure to complain about whatever matters having to do with their incarceration they do not like. The courts are not administrators of the prisons. The courts are not the general administrative grievance procedures set up to hear prisoner complaints. The jurisdiction of the federal courts basically is limited in the case of the treatment of state prisoners to violations of the United States Constitution and civil rights acts in suits brought under 42 U.S.C. § 1983.

Once again, the instant claim, like the entire lawsuit, is frivolous.

Finally, it is noted that the Plaintiff stated at the beginning of the *Spears* hearing that he wanted to withdraw his consent. There is no absolute right to withdraw a validly given consent to trial before a magistrate judge and such motions may be granted only on a showing of good cause or extraordinary circumstances. *Carter v. Sea Land Services, Inc.*, 816 F.2d 1018, 1021 (5th Cir. 1987); *Diaz v. Superior Energy Services LLC*, 341 Fed. Appx. 26, 26 (5th Cir. 2009). The Plaintiff does not have a basis for having consent withdrawn just because he changed his mind. The motion should be denied.

In conclusion, the Plaintiff's claims in this lawsuit fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the civil rights complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **7** day of **August, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE